UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

DOYLE MIMS et al.,

                    Plaintiffs,              Case No. 1:22-cv-323

v.                                           Honorable Paul L. Maloney

P.C. SIMON et al.,

                    Defendants.
_____/

**OPINION**

    This is a civil rights action brought by two state prisoners under 42 U.S.C. § 1983. Plaintiffs previously sought and were granted leave to proceed *in forma pauperis*. (ECF No. 7.) Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiffs' *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiffs' allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

    Applying these standards, the Court will dismiss Plaintiffs' complaint for failure to state a claim against Defendant Luther.[1] The Court will also dismiss, for failure to state a claim, the following claims: (1) Plaintiffs' First and Fourteenth Amendment claims regarding the grievance

---

[1] Plaintiffs name Resident Unit Manager Leuther in the caption but then clarify that the correct spelling of this individual's last name is Luther in the body of their complaint.

process; (2) Plaintiff Mims' Eighth Amendment claims of verbal harassment against Defendants Scott, Floyd, and Bledsoe; (3) Plaintiff Mims' Eighth Amendment claim against Defendants Scott and Floyd alleging that they aided C/O Tucker in harassing him and having a "hit" placed on him; (4) Plaintiff Mims' First Amendment retaliation claims against Defendants Scott, Floyd, and Bledsoe premised upon the denial of recreation because Plaintiff assaulted an officer at MBP; and (5) Plaintiff Mims' First Amendment retaliation claim premised upon his placement in segregation. The following claims remain: (1) Plaintiffs' Eighth Amendment claims against all remaining Defendants premised upon the denial of out-of-cell recreation; and (2) Plaintiffs' First Amendment retaliation claims against Defendants Ybara, Morgan, and Bledsoe premised upon the denial of recreation in response to their grievances. The Court will also deny Plaintiffs' motion to amend. (ECF No. 11.)

## Discussion

### I.    Factual Allegations

Plaintiffs are presently incarcerated with the Michigan Department of Corrections (MDOC) at the Ionia Correctional Facility (ICF) in Ionia, Ionia County, Michigan. The events about which they complain occurred at that facility. Plaintiffs sue Sergeants Unknown Cook, Unknown Bledsoe, and Unknown Morgan; Prisoner Counselor Simon, Resident Unit Manager Unknown Luther, and Corrections Officers Unknown Scott, Unknown Floyd, and Unknown Ybara.

Plaintiff Walker was transferred to ICF in July of 2021. (ECF No. 1, PageID.3.) Plaintiff Mims transferred to ICF on August 13, 2021. (*Id.*) On December 18, 2021, Plaintiff Mims was scheduled to have a seven-day period of out-of-cell recreation because he was on loss of privileges (LOP) status "exceeding 7 days." (*Id.*) After three days, however, Defendants Scott and Floyd cancelled Plaintiff Mims' remaining four days. (*Id.*) Plaintiff Mims complained to Defendant

2

Scott, and Defendant Scott said he would "check into it." (*Id.*) When Defendant Scott returned, he told Plaintiff Mims that "he wouldn't be getting the rest of his out of cell recreation because [of] what he had just got [out] of segregation for." (*Id.*)

Plaintiff Mims avers that this "became retaliation due to what he had been transferred to [ICF] for." (*Id.*, PageID.4.) Plaintiff Mims spoke to Defendants Bledsoe and Floyd and asked for the remainder of his outside recreation. (*Id.*) They denied him, stating, "they don't even want you out her[e] . . . on the actual outside yard; you assaulted an officer." (*Id.*) According to Plaintiff Mims, Defendants Floyd and Scott harassed him by calling him names and assisted Officer Tucker (not a party) in harassing him and having a hit placed on him, leading to his assault by another inmate. (*Id.*)

Plaintiff Mims was again denied his seven-day outside recreation period in January of 2022. (*Id.*) Defendants Scott, Floyd, and Bledsoe said that he was denied for supposedly assaulting an officer at the Marquette Branch Prison (MBP). (*Id.*)

Plaintiff "was placed in segregation on [January 20, 2022] out of retaliation. (*Id.*) Defendant Bledsoe "began making random rounds harassing [Plaintiff] Mims." (*Id.*) Plaintiff Walker advised Plaintiff Mims to file a grievance. (*Id.*)

Subsequently, Plaintiffs were due for their seven-day outside recreation periods. (*Id.*) Plaintiff Walker asked Defendant Ybara to schedule him for yard. (*Id.*) Defendant Ybara responded that Defendants Morgan and Bledsoe told him to make sure Plaintiffs did not get out-of-cell recreation until they stopped filing grievances. (*Id.*) Plaintiff Mims overheard the conversation and stated that they were supposed to receive a seven-day period per policy because no sanction "shall exceed 30 days without a 7 day grace period." (*Id.*) Defendant Ybara told Plaintiff Mims to "shut the f*** up." (*Id.*, PageID.5.)

3

Plaintiffs talked to Defendant Simon about the issue. (*Id.*) Defendant Simon asked why staff were refusing them their out-of-cell recreation. (*Id.*) Plaintiff Walker responded that it was because Plaintiffs file grievances. (*Id.*) Defendant Simon stated that Plaintiffs "better stop writing grievances and walked off [laughing]." (*Id.*)

Plaintiffs assert that they were "never allowed out of cell exercise for that 30 day period/month." (*Id.*) On March 18, 2022, Defendant Cook interviewed Plaintiff Walker about a grievance regarding the issue and told Plaintiff Walker that Defendant Bledsoe "shouldn't have done that." (*Id.*) Defendant Cook said that he would give Plaintiff Walker "make up recreation days, and he'll still get his 7 day usual out of cell recreation." (*Id.*) Plaintiff Mims explained that he had submitted a similar grievance, but it was rejected. (*Id.*) Defendant Cook indicated that he would "do the same remedy for him." (*Id.*)

Plaintiffs allege, however, that Plaintiff Walker only got two days out, and that Plaintiff Mims got none. (*Id.*) Numerous staff, including Defendant Ybara, ignored their "regular out of cell recreation." (*Id.*) Plaintiff Walker talked to Defendant Bledsoe again, and Defendant Bledsoe was "[adamant] about how he would break [Plaintiffs]." (*Id.*) Plaintiffs talked to Defendant Morgan, who told them that Defendant Cook did what he had to in order to "shut [them] up." (*Id.*) Plaintiff Mims asked Defendant Cook how Plaintiff Walker's grievance was granted but his was rejected. (*Id.*) Defendant Cook responded, "Well word on the compound [is you are] a problem and complain[] to[o] much[.] [I]f all your grievances go through we'll be up sh** creek in lawsuits." (*Id.*)

Plaintiff Mims told Plaintiff Walker that "they should seek help from the courts." (*Id.*, PageID.6.) Plaintiff Walker agreed. (*Id.*) Plaintiffs claim that they are "force[d] to be in a cell 24-7 without out of cell exercise." (*Id.*) Their "muscle mass is [deteriorating] due to lack of workouts."

4

(*Id.*) Plaintiffs also claim that "they are experiencing severe mental [deterioration] that's causing them to display animalistic behavior of [] caged animals." (*Id.*) Plaintiff Mims has not had yard since December of 2021; Plaintiff Walker has not had yard since January of 2022. (*Id.*)

Based on the foregoing, Plaintiffs raise First, Eighth, and Fourteenth Amendment claims. (*Id.*) Plaintiffs seek declaratory and injunctive relief, as well as compensatory and punitive damages. (*Id.*, PageID.7.)

## II.    **Motion to Amend**

Plaintiffs have filed a motion to amend, seeking to add defendants and additional facts. (ECF No. 11.) With respect to amendments, although a district court may allow a plaintiff to amend his complaint before entering a sua sponte dismissal, it is not required to do so. *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013); *see also Coleman v. Tollefson*, 733 F.3d 175, 177 (6th Cir. 2013) (discussing that a court need not permit a plaintiff to amend his complaint before dismissing under the PLRA). Leave to amend should be denied if the amendment would be futile. *See Marx v. Centran Corp.*, 747 F.2d 1536, 1550 (6th Cir. 1984) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Further, leave to amend may be denied if the amendment would result in the improper joinder of parties or claims. *Cf.* Fed. R. Civ. P. 21 (setting forth that "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party"). For the reasons set forth below, the Court concludes that permitting Plaintiffs to amend their complaint would result in the misjoinder of claims and Defendants in this action.

Plaintiffs seek to add the following ICF individuals as Defendants: Officers Richard, French, Flegel, and Naval. (ECF No. 11, PageID.41.) They seek to assert retaliation and free exercise claims under the First Amendment, claims under the Fourteenth Amendment, and a Prison Rape Elimination Act (PREA) claim. (*Id.*) According to the proposed additional facts, Plaintiff Mims offered to write a grievance for another inmate regarding the denial of that inmate's mail.

(*Id.*, PageID.42.) Defendant Morgan told Plaintiff Mims "since you want to help him we know all about the grievances and complaint about your yard/exercise suit you filed also." (*Id.*) Defendant Morgan told Officers Naval and Flegel to not give Plaintiff Mims his mail and Ramadan meal. (*Id.*) Officer Naval disparaged Plaintiff Mims' religion, and Officer Flegel told Plaintiff Mims that he would receive his Ramadan meal if he "[got] naked and [shook] his ass/buttocks." (*Id.*) Plaintiff Mims indicated that he would grieve the issue and "write the Court." (*Id.*) Defendant Morgan intervened and told Officer Flegel that if Plaintiff refused to dismiss his lawsuit and stop writing grievances to not "give him sh** and we'll take his next yard so he won't get that out of cell exercise he keep[s] asking for." (*Id.*, PageID.43.)

With respect to the joinder of parties and claims in a single lawsuit, Federal Rule of Civil Procedure 20(a) limits the joinder of parties, whereas Federal Rule of Civil Procedure 18(a) limits the joinder of claims. Specifically, Rule 20(a)(1) governs when multiple plaintiffs may be joined in one action: "[p]ersons may join in one action as plaintiffs if: (A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all plaintiffs will arise in the action." Fed. R. Civ. P. 20(a)(1). Rule 20(a)(2) governs when multiple defendants may be joined in one action: "[p]ersons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). Rule 18(a) states: "A party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party." Fed. R. Civ. P. 18(a).

Courts have recognized that, where multiple parties are named, as in this case, the analysis under Rule 20 precedes that under Rule 18:

> Rule 20 deals solely with joinder of parties and becomes relevant only when there is more than one party on one or both sides of the action. It is not concerned with joinder of claims, which is governed by Rule 18. Therefore, in actions involving multiple defendants Rule 20 operates independently of Rule 18. . . .
>
> Despite the broad language of Rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all.

7 Charles Allen Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1655 (3d ed. 2001), *quoted in Proctor v. Applegate*, 661 F. Supp. 2d 743, 778 (E.D. Mich. 2009), *and Garcia v. Munoz*, No. 08-1648, 2008 WL 2064476, at *3 (D.N.J. May 14, 2008); *see also United States v. Mississippi*, 380 U.S. 128, 142–43 (1965) (discussing that joinder of defendants is permitted by Rule 20 if both commonality and same transaction requirements are satisfied).

Therefore, "a civil plaintiff may not name more than one defendant in his original or amended complaint unless one claim against each additional defendant is transactionally related to the claim against the first defendant and involves a common question of law or fact." *Proctor*, 661 F. Supp. 2d at 778 (internal quotation marks omitted). When determining if civil rights claims arise from the same transaction or occurrence, a court may consider a variety of factors, including, "the time period during which the alleged acts occurred; whether the acts . . . are related; whether more than one act . . . is alleged; whether the same supervisors were involved, and whether the defendants were at different geographical locations." *Id.* (quoting *Nali v. Mich. Dep't of Corr.*, No. 07-10831, 2007 WL 4465247, at *3 (E.D. Mich. Dec. 18, 2007)). "[T]he policy of liberal application of Rule 20 is not a license to join unrelated claims and defendants in one lawsuit." *Boretsky v. Corzine*, No. 08-2265 (GEB), 2008 WL 2512916, at *4 (D.N.J June 23, 2008) (citations omitted). Furthermore, Rule 20 does not permit a plaintiff to "incorporate into an existing action a

different action against different parties and presenting entirely different factual and legal issues."
*Lovelace v. Lee*, No. 7:03-cv-395, 2007 WL 3069660, at *1 (W.D. Va. Oct. 21, 2007).

Permitting the improper joinder in a prisoner civil rights action also undermines the purpose of the PLRA, which was to reduce the large number of frivolous prisoner lawsuits that were being filed in the federal courts. *See Riley v. Kurtz*, 361 F.3d 906, 917 (6th Cir. 2004). Under the PLRA, a prisoner may not commence an action without prepayment of the filing fee in some form. *See* 28 U.S.C. § 1915(b)(1). These "new fee provisions of the PLRA were designed to deter frivolous prisoner litigation . . . 'by making all prisoner [litigants] . . . feel the deterrent effect created by liability for filing fees.'" *Williams v. Roberts*, 116 F.3d 1126, 1127–28 (5th Cir. 1997) (quoting *Jackson v. Stinnett*, 102 F.3d 132, 136–37 (5th Cir. 1996)). The PLRA also contains a "three-strikes" provision requiring the collection of the entire filing fee after the dismissal for frivolousness, etc., of three actions or appeals brought by a prisoner proceeding in forma pauperis, unless the statutory exception is satisfied. 28 U.S.C. § 1915(g). The "three strikes" provision was also an attempt by Congress to curb frivolous prisoner litigation. *See Wilson v. Yaklich*, 148 F.3d 596, 603 (6th Cir. 1998).

The Seventh Circuit has explained that prisoners like Plaintiffs may not join in one complaint all of the defendants against whom they may have a claim, unless they satisfy the dual requirements of Rule 20(a)(2):

> Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that [a multi]-claim, [multi]-defendant suit produce[s] but also to ensure that prisoners pay the required filing fees—for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g) . . . .
>
> A buckshot complaint that would be rejected if filed by a free person—say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D

8

failed to pay a debt, and E infringed his copyright, all in different transactions—
should be rejected if filed by a prisoner.

*George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *see also Brown v. Blaine*, 185 F. App'x 166, 168–69 (3d Cir. 2006) (allowing an inmate to assert unrelated claims against new defendants based on actions taken after the filing of his original complaint would have defeated the purpose of the three strikes provision of PLRA); *Patton v. Jefferson Corr. Ctr.*, 136 F.3d 458, 464 (5th Cir. 1998) (declining to allow "litigious prisoners to immunize frivolous lawsuits from the 'three strikes' barrier by the simple expedient of pleading unexhausted habeas claims as components of § 1983 suits"); *Shephard v. Edwards*, No. C2-01-563, 2001 WL 1681145, at *1 (S.D. Ohio Aug. 30, 2001) (declining to consolidate prisoner's unrelated various actions so as to allow him to pay one filing fee, because it "would improperly circumvent the express language and clear intent of the 'three strikes' provision"); *Scott v. Kelly*, 107 F. Supp. 2d 706, 711 (E.D. Va. 2000) (denying prisoner's request to add new, unrelated claims to an ongoing civil rights action as an improper attempt to circumvent the PLRA's filing fee requirements and an attempt to escape the possibility of obtaining a "strike" under the "three strikes" rule).

Upon consideration of Plaintiffs' original complaint and the proposed amendment, the only connection between the two is Defendant Morgan and the assertion that he continues to threaten to take Plaintiff Mims' out-of-cell recreation if he continues to file grievances and does not dismiss the instant lawsuit. That claim, however, is one that Plaintiffs have already set forth in their original complaint. None of the other proposed additional facts and defendants are transactionally related to the claims set forth in the original complaint. The fact that Plaintiff Mims believes that the withholding of his mail and Ramadan mail was in retaliation for his grievances regarding the lack of out-of-cell exercise does not automatically grant Plaintiff Mims leave to join unrelated claims

together. After all, in the prison context, any adverse incident experienced by a prisoner could be claimed to be retaliation; however, such incidents are not necessarily transactionally related.

Moreover, granting leave to amend would allow Plaintiff Mims to circumvent the PLRA's filing fee restrictions and allow him to avoid having to incur a "strike" for purposes of § 1915(g), should any of the proposed additional claims turn out to be frivolous. While Rule 20 does provide that "[n]either a plaintiff nor a defendant need be interested in obtaining or defending against all the relief demanded," *see* Fed. R. Civ. P. 20(a)(3), Plaintiff Mims essentially seeks to take advantage of the fact that he need only pay $175.00—half of the usual *in forma pauperis* filing fee—in this matter by attempting to add on new, unrelated claims that have no connection whatsoever to the claims he asserts with Plaintiff Walker. The Court, therefore, is obligated to reject a proposed misjoined complaint like Plaintiffs'. *See Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011).

As discussed above, Plaintiffs fail to show that the events set forth in their proposed amendment are transactionally related to the events underlying their original complaint. Therefore, allowing Plaintiffs to supplement their complaint with the four additional named defendants and additional claims for relief would result in the misjoinder of claims and Defendants in this action. Plaintiffs' motion to amend (ECF No. 11) will, therefore, be denied.[2]

### III.    Failure To State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels

---

[2] The denial of Plaintiffs' motion to amend will be without prejudice to their right to assert their proposed claims in a new lawsuit.

and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.    Claims Against Defendant Luther

Plaintiffs sue Defendant Luther, but their complaint is completely devoid of any allegations regarding him. Where an individual is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro*

*se* complaints. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights). A claimed constitutional violation must be based upon active unconstitutional behavior. *See Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). Plaintiffs' allegations are simply insufficient to allege a plausible constitutional claim against Defendant Luther. The Court, therefore, will dismiss Plaintiffs' claims against him.

## B.    Claims Regarding Grievance Process

Plaintiffs contend that Defendants' attempts to hinder and block their use of the grievance system violated their rights under the First and Fourteenth Amendments. (ECF No. 1, PageID.6.) Plaintiffs, however, have no due process right to file a prison grievance. The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy*, 30 F. App'x 568, 569–70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Thus, because Plaintiffs have no liberty interest in the grievance process, Defendants' conduct did not deprive them of due process.

Likewise, Plaintiffs' right to petition the government is not violated by Defendants' failure to process or act on their grievances. The First Amendment "right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999); *see also Minn. State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 285 (1984) (holding the right to petition protects only the right to address government; the government may refuse to listen or respond).

Furthermore, Defendants' actions have not barred Plaintiffs from seeking remedies for their grievances. *See Cruz v. Beto*, 405 U.S. 319, 321 (1972). "A prisoner's constitutional right to assert grievances typically is not violated when prison officials prohibit only 'one of several ways in which inmates may voice their complaints to, and seek relief, from prison officials' while leaving a formal grievance procedure intact." *Griffin v. Berghuis*, 563 F. App'x 411, 415–16 (6th Cir. 2014) (citing *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 130 n.6 (1977)). Indeed, Plaintiffs' ability to seek redress is underscored by their *pro se* invocation of the judicial process. *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982). Even if Plaintiffs had been improperly prevented from filing a grievance, their right of access to the courts to petition for redress of their grievances (i.e., by filing a lawsuit) cannot be compromised by their inability to file institutional grievances, and they therefore cannot demonstrate the actual injury required for an access-to-the-courts claim. *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 355 (1996) (requiring actual injury); *Bounds v. Smith*, 430 U.S. 817, 821–24 (1977). The exhaustion requirement only mandates exhaustion of *available* administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiffs were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action. *See Ross v. Blake*, 578 U.S. 632, 640–44 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by

13

policy or by the interference of officials, the grievance process is not available, and exhaustion is not required); *Kennedy v. Tallio,* 20 F. App'x 469, 470–71 (6th Cir. 2001). In light of the foregoing, the Court finds that Plaintiffs fail to state a cognizable claim regarding the grievance process.

### C.    Eighth Amendment Claims

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying

14

deliberate indifference standard to conditions of confinement claims). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

### 1.    Denial of Recreation

"[T]otal or near-total deprivation of exercise or recreational opportunity, without penological justification, violates Eighth Amendment guarantees." *Rodgers v. Jabe*, 43 F.3d 1082, 1086 (6th Cir. 1995) (quoting *Patterson v. Mintzes*, 717 F.2d 284, 289 (6th Cir. 1983)). Here, Plaintiffs allege that Defendants have not provided them their seven-day recreation breaks from LOP status since December of 2021 for Plaintiff Mims and January of 2022 for Plaintiff Walker. Plaintiffs further allege that they have suffered deteriorating muscle mass and "severe mental deterioration" from the lack of out-of-cell exercise. (ECF No. 1, PageID.6.) Here, the length of time for which Plaintiffs contend they have been denied out-of-cell exercise, if not justified by a legitimate penological objective, at least implicates the protections of the Eighth Amendment. *See Patterson*, 717 F.2d at 289 (reversing a grant of summary judgment for defendants regarding the inmate-plaintiff's claim that he did not receive an opportunity for exercise for 46 days); *Solano-Moreta v. Washington*, No. 2:18-cv-111, 2019 WL 1466302, at *8–9 (W.D. Mich. Apr. 3, 2019)

(concluding that inmate-plaintiff stated an Eighth Amendment claim when he alleged that he had been denied out-of-cell exercise "on a total of 250 days during the period from April 2017 and August 2018" as well as "for more than 60 straight days, from January 1, 2018, to March 2018"); *Delaney v. DeTella*, 123 F. Supp. 2d 429, 435–39 (N.D. Ill. 2000) (concluding, on summary judgment, that a six-month period of time without out-of-cell exercise violated Eighth Amendment because it was not justified by a legitimate penological objective); *cf. May v. Baldwin*, 109 F.3d 557, 565–66 (9th Cir. 1997) (holding that denial of out-of-cell exercise for 21 days did not rise to Eighth Amendment violation); *Knight v. Armontrout*, 878 F.2d 1093, 1096 (8th Cir. 1989) ("Denial of recreation for a short period, per se, is not a constitutional violation."); *Davenport v. DeRobertis*, 844 F.2d 1310 (8th Cir. 1988) (upholding a 90-day segregation threshold before five hours of weekly out-of-cell exercise is required), *cited with approval in Pearson v. Ramos*, 237 F.3d 881, 884–85 (7th Cir. 2001); *Harris v. Fleming*, 839 F.2d 1232, 1236 (7th Cir. 1988) (holding that there was no Eighth Amendment violation when the plaintiff was held in segregation without outdoor exercise for 28 days). Accordingly, the Court concludes that Plaintiffs have set forth plausible Eighth Amendment claims concerning the denial of recreation against Defendants.

### 2.    Verbal Harassment

Plaintiff Mims suggests that on various occasions, he was verbally harassed by Defendants Floyd, Scott, and Bledsoe. (ECF No. 1, PageID.4.) The use of harassing or degrading language by a prison official, although unprofessional and deplorable, does not rise to constitutional dimensions. *See Ivey*, 832 F.2d 950, 954–55 (6th Cir. 1987); *see also Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (holding that harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits); *Violett v. Reynolds,* No. 02-6366, 2003 WL 22097827, at *3 (6th Cir. Sept. 5, 2003) (concluding that verbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim); *Thaddeus-X v. Langley*,

No. 96-1282, 1997 WL 205604, at *1 (6th Cir. Apr. 24, 1997) (finding that verbal harassment is insufficient to state a claim); *Murray v. U.S. Bureau of Prisons*, No. 95-5204, 1997 WL 34677, at *3 (6th Cir. Jan. 28, 1997) ("Although we do not condone the alleged statements, the Eighth Amendment does not afford us the power to correct every action, statement, or attitude of a prison official with which we might disagree."); *Clark v. Turner*, No. 96-3265, 1996 WL 721798, at *2 (6th Cir. Dec. 13, 1996) ("Verbal harassment or idle threats are generally not sufficient to constitute an invasion of an inmate's constitutional rights."); *Brown v. Toombs*, No. 92-1756, 1993 WL 11882 (6th Cir. Jan. 21, 1993) ("Brown's allegation that a corrections officer used derogatory language and insulting racial epithets is insufficient to support his claim under the Eighth Amendment."). Accordingly, Plaintiff Mims fails to state an Eighth Amendment claim against Defendants Floyd, Scott, and Bledsoe arising from their alleged verbal abuse.

### 3.    Aiding in Harassment and Placing a "Hit"

Plaintiff Mims vaguely alleges that Defendants Floyd and Scott "aid[ed] [and] abett[ed] []C/O Tucker[] [(not a party)] in harassment and having a 'hit' put on" him. (ECF No. 1, PageID.4.) The Court recognizes that inmates have a constitutionally protected right to personal safety grounded in the Eighth Amendment. *Farmer*, 511 U.S. at 833. Thus, prison staff are obliged "to take reasonable measures to guarantee the safety of the inmates" in their care. *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984). In particular, because officials have "stripped [prisoners] of virtually every means of self-protection[,]" "officials have a duty to protect prisoners from violence at the hands of other prisoners." *Id.* at 833. To establish a violation of this right, Plaintiff must show that Defendant was deliberately indifferent to the Plaintiff's risk of injury. *Walker v. Norris*, 917 F.2d 1449, 1453 (6th Cir. 1990); *McGhee v. Foltz*, 852 F.2d 876, 880–81 (6th Cir. 1988).

Plaintiff Mims' claims, however, are simply insufficient to permit the Court to infer that Defendants Floyd and Scott were deliberately indifferent to his risk of injury. As noted *supra*,

verbal harassment itself is insufficient to state an Eighth Amendment claim. Moreover, the complaint is completely devoid of facts regarding the "hit" and Plaintiff Mims' assault by another inmate. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. Accordingly, the Court will dismiss any Eighth Amendment claims against Defendants Scott and Floyd premised upon their assisting C/O Tucker in harassing Plaintiff Mims and participation in placing a "hit" on Plaintiff Mims.

### D. First Amendment Retaliation Claims

Plaintiffs also assert several instances of alleged retaliation throughout their complaint. For example, Plaintiff Mims contends that Defendants Floyd, Scott, and Bledsoe did not give him his recreation break because he assaulted an officer at MBP. (ECF No. 1, PageID.4.) Plaintiff Mims also contends that he was "placed in segregation . . . out of retaliation." (*Id.*) Plaintiffs also suggest that Defendants Ybara, Morgan, and Bledsoe told them that they would not get out-of-cell recreation until they stopped writing grievances. (*Id.*)

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

18

### 1.    Protected Activity

Plaintiffs contend that Defendants Ybara, Morgan, and Bledsoe denied them recreation for filing grievances. (ECF No. 1, PageID.4.) An inmate has a right to file "non-frivolous" grievances against prison officials on his own behalf, whether written or oral. *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018); *Mack v. Warden Loretto FCI*, 839 F.3d 286, 298–99 (3d Cir. 2016) ("[The prisoner's] oral grievance to [the prison officer] regarding the anti-Muslim harassment he endured at work constitutes protected activity under the First Amendment."); *Pearson v. Welborn*, 471 F.3d 732, 741 (7th Cir. 2006) ("[W]e decline to hold that legitimate complaints lose their protected status simply because they are spoken."); *see also Pasley v. Conerly*, 345 F. App'x 981, 984–85 (6th Cir. 2009) (finding that a prisoner engaged in protected conduct by *threatening* to file a grievance). "Nothing in the First Amendment itself suggests that the right to petition for redress of grievances only attaches when the petitioning takes a specific form." *Holzemer v. City of Memphis*, 621 F.3d 512, 521 (6th Cir. 2010) (finding that a conversation constituted protected petitioning activity) (quoting *Pearson*, 471 F.3d at 741). Plaintiffs, therefore, have sufficiently alleged that they engaged in protected activity by filing grievances.

Plaintiff Mims, however, also suggests that Defendants Scott, Floyd, and Bledsoe denied him recreation because of his supposed assault on an officer at MBP. (ECF No. 1, PageID.4.) Plaintiff Mims' assaults on staff, however, are clearly not examples of protected conduct. *See Kirkendall v. Jaramillo*, No. 16-1500, 2016 WL 11005056, at *2 (6th Cir. 2016) (noting that "assaulting a prison employee is not protected conduct"); *see also Wisconsin v. Mitchell*, 508 U.S. 476, 484 (1993) (summarizing Supreme Court cases holding that, although "an apparently limitless variety of conduct can be labeled 'speech' whenever the person engaging in the conduct intends thereby to express an idea[,]" "a physical assault is not by any stretch of the imagination expressive conduct protected by the First Amendment." (internal citations and quotation marks omitted)); *see*

19

*also Roberts v. U.S. Jaycees*, 468 U.S. 609, 628 (1984) ("[V]iolence or other types of potentially expressive activities that produce special harms distinct from their communicative impact . . . are entitled to no constitutional protection."); *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 916 (1982) ("The First Amendment does not protect violence."). Moreover, conduct that violates a legitimate prison regulation is not protected under the First Amendment—or any other amendment. *See Thaddeus-X*, 175 F.3d at 395; *Lockett v. Suardini*, 526 F.3d 866, 874 (6th Cir. 2008) (finding that insolence is not protected conduct). Both assault and battery and assault resulting in serious physical injury are legitimate Class I misconduct violations. *See* MDOC Policy Directive 03.03.105, Attach. A (eff. July 1, 2018). Accordingly, Plaintiff Mims cannot maintain his retaliation claims against Defendants Floyd, Scott, and Bledsoe premised upon his assaults on staff, and such claims will be dismissed.

### 2.    Adverse Action

To establish the second element of a retaliation claim, a prisoner-plaintiff must show adverse action by a prison official sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Thaddeus-X*, 175 F.3d at 396. The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendants' conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (emphasis in original).

Plaintiff Mims vaguely suggests that he was "placed in segregation . . . out of retaliation." (ECF No. 1, PageID.4.) Transfer to segregation can be sufficient to constitute adverse action. *See Hill v. Lappin*, 630 F.3d 468, 474–75 (6th Cir. 2010). Here, however, Plaintiff Mims alleges no facts to suggest that the named Defendants are the ones who placed him segregation. Plaintiff Mims' retaliation claim premised upon his placement in segregation will, therefore, be dismissed.

*See Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987) (noting that "alleging merely the ultimate fact of retaliation is insufficient").

Plaintiffs contend that Defendants Ybara, Morgan, and Bledsoe indicated that Plaintiffs would not receive recreation until they stopped filing grievances. (ECF No. 1, PageID.4.) While the occasional denial of recreation does not rise to the level of adverse action, *see Burgos v. Canino*, 358 F. App'x 302, 307 (3d Cir. 2009), Plaintiffs here allege that they have been consistently denied recreation for months. The Court, therefore, concludes that Plaintiffs have sufficiently alleged that Defendants Ybara, Morgan, and Bledsoe engaged in adverse action in response to their grievances.

### 3.    Retaliatory Motive

Plaintiffs specifically allege that Defendants Ybara, Morgan, and Bledsoe indicated that Plaintiffs would not receive recreation until they stopped filing grievances. Such adverse action was temporally proximate to Plaintiffs' filing of grievances and expressly conditioned on Plaintiffs' protected conduct. Plaintiffs, therefore, have adequately alleged First Amendment retaliation claims against Defendants Ybara, Morgan, and Bledsoe premised upon the denial of recreation in response to their grievances. As discussed above, all of their other retaliation claims will be dismissed.

### <u>Conclusion</u>

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendant Luther will be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, the following claims: (1) Plaintiffs' First and Fourteenth Amendment claims regarding the grievance process; (2) Plaintiff Mims' Eighth Amendment claims of verbal harassment against Defendants Scott, Floyd, and Bledsoe; (3) Plaintiff Mims' Eighth Amendment

claim against Defendants Scott and Floyd alleging that they aided C/O Tucker in harassing him and having a "hit" placed on him; (4) Plaintiff Mims' First Amendment retaliation claims against Defendants Scott, Floyd, and Bledsoe premised upon the denial of recreation because Plaintiff assaulted an officer at MBP; and (5) Plaintiff Mims' First Amendment retaliation claim premised upon his placement in segregation. The following claims remain: (1) Plaintiffs' Eighth Amendment claims against all remaining Defendants premised upon the denial of out-of-cell recreation; and (2) Plaintiffs' First Amendment retaliation claims against Defendants Ybara, Morgan, and Bledsoe premised upon the denial of recreation in response to their grievances. The Court will also deny Plaintiffs' motion to amend. (ECF No. 11.)

An order consistent with this opinion will be entered.


Dated:    April 29, 2022                          /s/ Paul L. Maloney
                                                  Paul L. Maloney
                                                  United States District Judge